# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PATRICK CHARLES DOUGLAS,

*Plaintiff,*

vs.

JC PENNY LOGISTICS CENTER,

*Defendant,*

Case No. 09-2307-EFM

## MEMORANDUM AND ORDER

This matter arises out of Plaintiff Patrick Charles Douglas's termination by Defendant JC Penny Logistics Center, wherein Plaintiff alleges that Defendant had engaged in reverse discrimination of male employees. Plaintiff claims Defendant decided to terminate his employment only after discovering that he had made a report of reverse gender discrimination to the Equal Employment Opportunity Commission ("EEOC"). Defendant denies Plaintiff's claim, and asserts that the reason for the termination was Plaintiff's "disruptive behavior," which included problems working with another co-worker, numerous sexual harassment complaints, and refusal to participate in a company investigation that was unrelated to his EEOC complaint. Now before the Court is Defendant's Motion for Summary Judgment (Doc. 28).[1] For the following reasons, the Court grants

---

[1] Also before the Court is a motion by Plaintiff titled "Request for Summary Judgment," (Doc. 44), in which he asks the Court to provide the status of Defendant's Summary Judgment Motion.

Defendant's motion, and dismisses Plaintiff's motion as moot.

## I. Background[2]

Plaintiff began working for Defendant at its Lenexa, KS facility on August 28, 2007 as a Carton Processing Associate. Sometime in 2008, Defendant promoted Plaintiff to the position of Detail Check Associate, which required him work with another employee as a two-person team. The team was responsible for inspecting merchandise and preparing it to be shipped to various retail locations. Throughout 2008, Defendant made various changes to the Detail Check Associate position, including reassignment of the two person teams and changing the compensation structure from hourly to a system based on productivity. As part of this restructuring, Defendant reassigned Plaintiff to work with a new partner, Tenisha Richardson.

The relationship between Plaintiff and Richardson would turn out to be very confrontational. Plaintiff and Richardson did not get along and each regularly made complaints about the pairing to their supervisor. The first of these complaints took place on October 7, 2008, when Plaintiff complained to his immediate supervisor, Dave Reed, about Richardson's work performance and asked Reed to pair him with another employee. Reed acknowledged the complaint and discussed the matter with Richardson, but he declined to reassign the employees. Thereafter, on November 10, 2008, Richardson made a complaint against Plaintiff. Richardson also asked Reed to pair her with another partner because she claimed that Plaintiff repeatedly scratched his genitals in front of

---

[2]In his response to Defendant's motion for summary judgment, Plaintiff failed to provide a "concise statement of material facts as to which the party contends a genuine issue exists" as required by D. Kan. Rule 56.1(b). Instead, Plaintiff merely listed all of his factual assertions, along with his personal commentary, without any reference to the facts set forth in Defendant's motion or indication which of Defendant's facts are controverted. For this reason, the Court may deem Defendant's facts admitted under D. Kan. Rule 56.1(b). Nonetheless, because Plaintiff brings this action *pro se*, the Court will make a reasonable effort to decipher Plaintiff's response to determine when Plaintiff intended to assert an objection to a particular factual assertion made by Defendant.

her. Again, Reed declined to reassign the employees. Rather, Reed met with Plaintiff to ask him to stop scratching his genitals. In both of these instances, Reed discussed the allegations with the accused employee, and after the discussion, noted the incident in each of their files.

In addition to making complaints against each other, Plaintiff and Richardson engaged in several heated confrontations that escalated to the point of requiring management intervention. One such incident took place on December 9, 2008, when Plaintiff and Richardson had a disagreement about the proper way to hang clothing for inspection. During this disagreement, the interaction between Plaintiff and Richardson became confrontational. Both went to Reed's office, where Reed discussed the situation with them and determined that both employees were acting unprofessionally. Richardson then imparted on both Plaintiff and Richardson the importance of treating each other with respect in the workplace and documented the conversation in both of their files at the end of the conversation.

Around Christmas of 2008, both Plaintiff and Richardson filed complaints of sexual harassment against each other with Defendant's Human Resources Department ("HR"). Denise Davis, an HR employee, investigated the complaints and discussed the findings with Plaintiff first on January 21 and then again on January 23. At the first meeting, Davis informed Plaintiff that she had completed the investigation of his complaints against Richardson. Davis told Plaintiff she had not found any evidence Richardson was sexually harassing him, but there was evidence Richardson was acting inappropriately when she used vulgar language in his presence. At the second meeting, Davis informed Plaintiff she also could not substantiate Richardson's sexual harassment claim against Plaintiff, but nonetheless found he had been acting similarly inappropriate. Based on the

results of the two investigations, Davis gave both Plaintiff and Richardson a written policy violation warning for their behaviors and documented the findings in their employee files.

On January 26, 2009, Plaintiff submitted a letter to HR expressing his dissatisfaction with the resolution of his sexual harassment claim against Richardson. In response to this letter, Davis met with Plaintiff, where she again informed him she was unable to find any evidence supporting his claim of sexual harassment. Because there was no evidence of sexual harassment, Davis told Plaintiff she would not reassign him to another work partner unless he could find someone willing to work with him. At this time, Plaintiff informed Defendant he intended to file a claim with the EEOC. Plaintiff filed this complaint with the EEOC on February 9, 2009.

On February 23, 2009, several other employees came forward alleging that Plaintiff had sexually harassed them. To allow time to conduct an investigation into the allegations, Defendant temporarily transferred Plaintiff to another department away from the accusers and began interviewing all of the employees who had worked with Plaintiff. During these interviews, Defendant not only found evidence to support the original claims made against Plaintiff, but also discovered several additional employees who claimed they were also sexually harassed by Plaintiff but had not yet come forward.

Three days after Plaintiff's transfer, two HR representatives, Laura Ewing and Cathy Christopherson, met with Plaintiff to discuss the allegations. During this meeting, Plaintiff refused to cooperate, stating he was unable to answer questions about an ongoing EEOC investigation. Despite Defendant's assurances that the questioning did not relate to his complaint with the EEOC, Plaintiff continued to refuse to answer their questions.

Because Plaintiff refused to cooperate, Defendant sent Plaintiff home for the weekend and requested he contact them by 1:00 pm the following Monday to further discuss the allegations. On Monday, Plaintiff arrived at work and headed directly to HR where he met with Davis. When Plaintiff requested his badge to return to work, Davis informed him she was suspending him until he was willing to cooperate with the investigation. When Plaintiff again refused, Davis reminded him the investigation was not related to his EEOC complaint and offered to allow him to contact the EEOC for guidance. Additionally, Davis warned Plaintiff that she would continue to conduct the investigation with or without his cooperation. Before leaving, Plaintiff provided Defendant with a letter indicating his belief that Defendant was retaliating against him for his decision to make a report to the EEOC.

On March 11, 2009, Defendant terminated Plaintiff for "disruptive behavior." The "Reason for Dismissal" form provided to Plaintiff outlined the complaints made against him and his previous warnings for inappropriate behavior. Plaintiff contends the actual motivation for his termination was either Defendant's discrimination of male employees or retaliation for Plaintiff's report to the EEOC. Therefore, Plaintiff has brought claims under Title VII of the Civil Rights Act[3] for discrimination and retaliation.

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[4] "An issue of

---

[3] 42 U.S.C. § 2000e *et seq.*

[4] Fed. R. Civ. P. 56(c).

fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[5] A fact is "material" when "it is essential to the proper disposition of the claim."[6] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[7]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[8] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[9]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[10] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[13] Neither conclusory allegations nor conclusory

---

[5]*Haynes v. Level 3 Commc'ns*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6]*Id.*

[7]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23,(1986)).

[9]*Id.* (citing *Celotex*, 477 U.S. at 325).

[10]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[12]*Adler*, 144 F.3d at 671.

[13]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

statements of law are in and of themselves sufficient to preclude summary judgment.[14]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

Because Plaintiff is pursuing this action *pro se*, the Court must be mindful of additional considerations. "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[16] However, "it is not the proper function of the district court to assume the role of advocate for the *pro se* litigant."[17] In addition, *a pro se* plaintiff is not excused from the burden of coming forward with some "specific factual support" other than conclusory allegations to support his claims.[18] "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[19]

### III. Analysis

Defendant argues it is entitled to summary judgment because Plaintiff has failed to establish a prima facie case of reverse discrimination or retaliation. Defendant further claims that even if Plaintiff has established a prima facie case, Defendant has offered a legitimate, non-retaliatory explanation for the termination, and Plaintiff has not presented sufficient evidence to show the offered explanation is pretextual. In response, Plaintiff contends there are sufficient facts in dispute

---

[14]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995); *see also Nahno-Lopez et al. v. Houser et al.*, ---F.3d----, 2010 WL 4456989, at *6 (10th Cir. 2010) (citing *Ashcroft v. Iqbal*, ---U.S.----, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twonbly*, 550 U.S. 544, 555 (2007)).

[15]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[16]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17]*Id.*

[18]*Douglas v. Gen. Motors, Corp.*, 368 F. Supp. 2d 1220, 1228 (D. Kan. 2008) (Citing *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988)).

[19]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

to defeat Defendant's Motion for Summary Judgment.

### A. Title VII Discrimination Claim

Plaintiff's first claim alleges that Defendant engaged in discrimination against male employees by taking complaints made by female employees more seriously than those made by male employees. Because of this disparate treatment, Plaintiff claims Defendant allowed female employees to sexually harass male employees, resulting in a hostile work environment. Further, Plaintiff contends Defendant based its decision to terminate him primarily on discriminatory motives. Defendant argues that because Plaintiff has failed to allege background facts that would support an inference that Defendant is one of the unusual employers that discriminates against the majority, he failed to state a prima facie case of reverse discrimination. Alternatively, Defendant claims it had a legitimate, non-discriminatory reason for the termination and that Plaintiff has not set forth evidence showing that the offered reason is pretextual.

Claims of gender discrimination are governed by the familiar burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[20] Under this framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination.[21] Once a prima facie case is established, the burden shifts to the defendant to provide a legitimate, non-discriminatory explanation for its adverse action against the employee.[22] If the defendant is able to provide this explanation, the burden shifts back to the plaintiff to provide evidence to support an inference that the offered

---

[20]411 U.S. 792, 802-04 (1973); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

[21]*Argo*, 452 F.3d at 1201.

[22]*Id.*

explanation was merely pretextual.[23]

Although the primary purpose of Title VII was to eliminate discrimination against those who have historically been discriminated against on the basis of race, sex, color, religion or national origin, Title VII prohibits all forms of discrimination, including "reverse discrimination," or discrimination against individuals who are members of the majority.[24] However, because reverse discrimination is less common, the courts have held many of the presumptions that are traditionally available in discrimination cases must be modified when dealing with claims of reverse discrimination.[25]

In a traditional discrimination case, the Court presumes a prima facie case of discrimination once a plaintiff has shown he or she is a member of a protected class and the plaintiff's employer took an adverse action against him or her that it did not take against others.[26] Because there is a history of discrimination against members of a protected class, the Court is able to infer that when a defendant has treated a plaintiff differently than other employees, "it is more likely than not [the disparate treatment was] based on impermissible considerations."[27] On the other hand, when a plaintiff is claiming reverse discrimination, there is no historical evidence to support such an inference.[28] Therefore, before the Court will infer discrimination based on disparate treatment, a plaintiff in a reverse discrimination case must meet the additional burden of providing sufficient

---

[23]*Id.*

[24]*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279 (1976).

[25]*Livingston v. Roadway Express, Inc.*, 802 F.2d 1250, 1252 (10th Cir. 1986).

[26]*See Argo*, 452 F.3d at 1201.

[27]*Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

[28]*Livingston*, 802 F.2d at 1252.

background evidence to show "the defendant is one of those unusual employers who discriminates against the majority."[29]

If a plaintiff cannot provide this background evidence, the plaintiff's only other method of establishing a prima facie case of discrimination is by offering evidence that shows it is reasonably likely he or she would not have been fired "but for" the defendant's discrimination.[30] It is not enough for a plaintiff to show it was treated differently than another similarly situated employee.[31] "Instead, the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred."[32]

Plaintiff asks the Court to infer a prima facie case of discrimination from his assertion that Defendant treated Plaintiff differently than it did Richardson, his female partner. Because Plaintiff is not a member of a group that has historically been the victim of discrimination, he has the burden of showing that Defendant is one of the unusual employers that discriminates against the majority.[33] Plaintiff does not present any evidence which allows the Court to reach this conclusion. Plaintiff has offered no evidence showing a discrepancy in Defendant's hiring, firing, promotion, or discipline of male versus female employees. In fact, Plaintiff does not even assert antidotal evidence of another male employee who Defendant treated differently than other female employees. Without such background information there is no basis for the Court to infer Defendant's treatment of

---

[29]*Argo*, 452 F.3d at 1201.

[30]*Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992).

[31]*Id.*

[32]*Id.*

[33]*See Argo*, 452 F.3d at 1201.

-10-

Plaintiff was discriminatory.[34] Neither has Plaintiff provided any evidence to demonstrate that "but for" Defendant's discrimination, Defendant would not have terminated him. In fact, the only evidence Plaintiff provides to prove discrimination relates to the disparate treatment between himself and one other female employee, Richardson. The Tenth Circuit, however, has previously held that disparate treatment of two individuals alone is insufficient to establish "but for" causation.[35] Therefore, Plaintiff has failed to establish a prima facie case of reverse discrimination. Accordingly, Defendant is entitled to summary judgment on this issue.

### *B. Retaliation*

Plaintiff next argues that Defendant terminated his employment in retaliation for his report of discrimination to the EEOC. Defendant responds by arguing that Plaintiff has failed to establish a causal link between his termination and his report to the EEOC. Defendant also asserts it has presented a legitimate, non-retaliatory explanation for Plaintiff's termination and Plaintiff has failed to present any evidence that the offered reason was pretextual.

Similar to Plaintiff's discrimination claim, a retaliation claim is subject to the burden shifting framework set forth in *McDonnell Douglas*.[36] Therefore, the burden first rests with a plaintiff to establish a prima facie case of retaliation.[37] If a prima facie case is established, the defendant must offer a legitimate, non-discriminatory explanation for the termination.[38] Once the defendant has offered this explanation, the burden shifts back to the plaintiff to show that the offered reason is

---

[34] *See Notari,* 971 F.2d at 590.

[35] *Id.*

[36] *Fry v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

[37] *Id.*

[38] *Id.*

-11-

merely pretextual.[39] In a retaliation case, a plaintiff can set forth a prima facie case by showing: "(1) that he engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action."[40]

When "the termination is very closely connected in time to the protected activity," further evidence is not necessary to establish a prima facie case for causation.[41] However, if a prima facie case is established and the defendant then meets its burden by offering a legitimate, non-discriminatory reason for termination, temporal proximity, no matter how closely related, is never enough to establish that an offered reason was pretext for discrimination.[42] Therefore, to establish pretext in order to defeat a motion for summary judgment, there must be additional facts in contention that show a retaliatory motive on the part of the defendant.[43] This is typically accomplished by showing: (1) evidence that the offered explanation for the termination is false; (2) evidence that the termination contradicts with written company policy; or (3) evidence that the employee was treated differently than other employees in similar situations.[44]

Here, Defendant has conceded the first two of the three elements of a prima facie claim for retaliation – Plaintiff engaged in a protected activity by filing an EEOC complaint, and after engaging in the protected activity, Defendant terminated Plaintiff. Accordingly, Plaintiff is left only

---

[39]*Id.*

[40]*Argo*, 452 F.3d at 1202.

[41]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

[42]*Metzer v. Fed. Home Loan Bank*, 464 F.3d 1164, 1172 (10th Cir. 2006).

[43]*Id.*

[44]*Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

with the burden of showing a causal relationship between his report to the EEOC and his termination. Here, Plaintiff made the report to the EEOC on January 26, 2009, and on March 11, 2009, Defendant terminated Plaintiff. Thus, Plaintiff's termination occurred within 45 days of Plaintiff engaging in a protected activity. In *Ramirez v. Oklahoma Department of Health,*[45] the Tenth Circuit upheld a district court decision that a month and a half was "sufficiently close" to establish causation.[46] Therefore, the temporal proximity in this case alone is enough to establish causation for the purposes of establishing a prima facie case of retaliation.[47]

Next, we conclude that Defendant has effectively set forth a legitimate, non-retaliatory motive for Plaintiff's termination. Defendant stated it terminated Plaintiff for "disruptive behavior." Defendant cites Plaintiff's previous history of conflicts with other employees, numerous sexual harassment complaints, and failure to participate in the investigation of the most recent complaint against him as the underlying basis for its decision to terminate Plaintiff. Because this explanation is not related to Plaintiff's decision to file a report with the EEOC, Defendant has offered a non-retaliatory motive for the termination. As a result, the burden shifts back to Plaintiff to show the offered explanation was merely pretextual.

To meet this burden Plaintiff must show "evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive."[48] Plaintiff fails to provide the Court with such

---

[45] 41 F.3d 584 (10th Cir. 1994).

[46] *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994).

[47] *See id.*

[48] *Metzler*, 464 F.3d at 1172 (emphasis in original).

circumstantial evidence.[49] Plaintiff does not dispute the existence of numerous complaints of sexual harassment against him nor his refusal to participate in the subsequent investigation. Plaintiff does assert disparate treatment between himself and one other employee, his partner Richardson. However, Plaintiff's own assertions show Defendant did not treat Plaintiff differently than it did Richardson when the two were in similar situations. In each of the instances in where Plaintiff and Richardson accused each other of inappropriate conduct, the punishment Plaintiff admits they both recieved was identical. Moreover, Defendant made the decision to suspend and ultimately terminate Plaintiff based on circumstances unique to Plaintiff. Defendant suspended Plaintiff after Defendant received complaints from several of Plaintiff's co-workers that Plaintiff had sexually harassed them. Plaintiff has offered no evidence that any of these co-workers, or any other employee, made similar complaints against Richardson. Defendant terminated Plaintiff when he refused to cooperate with the investigation into the sexual harassment complaints made against him, complaints which were unrelated to his previously filed EEOC charge. Again, because there was no showing of similar complaints made against Richardson, Defendant did not ask Richardson to participate in an investigation. For these reasons, we conclude that Plaintiff has failed to set for forth any evidence supporting the conclusion that the offered reason for Plaintiff's termination was merely pretextual. Accordingly, Defendant is entitled to summary judgment on this issue.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 28) is hereby GRANTED.

---

[49]In his reply, Plaintiff does make additional factual assertions that the offered explanation was pretextual; however, these assertions are not properly supported by the record as required by D. Kan. Rule 56.1(d). Therefore, the Court will not consider these unsupported conclusions.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 44) is hereby DENIED as moot.

**IT IS SO ORDERED.**

Dated this 9th day of December, 2010.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE